1

2

3

4

5

6

7

8            IN THE UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10   Russell Robison,

11          Petitioner,                    No. CIV S-08-2611 CHS P

12      vs.

13   RICHARD B. IVES,

14          Respondent.      <u>ORDER DENYING PETITION</u>

15   _____/

16                        I.  INTRODUCTION

17          Petitioner Robison, a federal prisoner currently incarcerated at the Herlong

18   Federal Correctional Institution, proceeds pro se with an amended petition for writ of habeas

19   corpus pursuant to 28 U.S.C. §2241.  Petitioner stands convicted of a methamphetamine offense

20   for which he is currently serving a prison term of 119 months.  The parties agree that petitioner's

21   expected release date is October 1, 2011, via good conduct time release.

22          Petitioner has twice requested transfer to a Residential Re-Entry Center

23   (hereinafter "RRC") to serve the remainder of his sentence.  Pursuant to 18 U.S.C. § 3624, the

24   Bureau of Prisons (hereinafter "BOP") exercised its discretion to refer petitioner for RRC

25   placement for the last 180 days of his sentence.  Petitioner contends that the BOP misapplied

26   applicable federal law in failing to refer him for lengthier RRC placement.  In the pending

amended petition, he seeks an order: (1) requiring respondent to evaluate him for transfer to a RRC based on the specific factors of 18 U.S.C. § 3621(b), without taking into account or utilizing a BOP Memorandum dated November 14, 2008; and (2) requiring respondent to "factually justify" the RCC placement determination.

In opposition to petitioner's requested relief, respondent contends: (1) this court lacks subject matter jurisdiction over the petition; (2) petitioner failed to exhaust available administrative remedies; and, in the alternative, (3) the petition should be denied on its merits.

The parties have consented to jurisdiction by a United States Magistrate Judge. For the reasons that follow, the petition will be denied on the merits.

## II.  BACKGROUND

Pursuant to the applicable statutory scheme, the BOP "shall designate" the place of a prisoner's imprisonment.  18 U.S.C. § 3621(b).  The BOP may designate any available facility determined to be appropriate and suitable, considering five factors: (1) the facility's resources; (2) the nature and circumstances of the prisoner's offense; (3) the history and characteristics of the prisoner; (4) a statement by the court that imposed the sentence concerning the purposes for which the sentence was determined to be warranted or recommending a type of penal or correctional facility as appropriate; and (5) any pertinent policy statement issued by the Sentencing Commission.  18 U.S.C. § 3621(b)(1)-(5).

Under the Second Chance Act of 2007 ("SCA"), Pub. L. No. 110-199, 122 Stat. 657 (2008) (codified at 42 U.S.C. §§ 17501-17555, § 3624(c)), a separate statutory duty exists:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community.  Such conditions may include a community correctional facility.

18 U.S.C. § 3624.

/////

1            On April 14, 2008, five days after the SCA went into effect, BOP officials issued

2    a memorandum (the "April 14 Memorandum") setting forth guidance for BOP staff

3    administering the new law.  *Sacora v. Thomas*, No. 10-35553, slip op. at 2 (9th Cir. Dec. 6,

4    2010).  Quoting section 3624(c)(6)(C), the April 14 Memorandum notes that the SCA requires

5    staff to ensure that pre-release placements in community corrections facilities are "of sufficient

6    duration to provide the greatest likelihood of successful reintegration to the community," and

7    additionally indicates "[t]his means Bureau staff *must* approach every individual inmate's

8    assessment with the understanding that he or she is now *eligible* for a maximum of 12 months

9    pre-release RRC placement."  *Id*.  The April 14 Memorandum cautions that "any other possible

10   maximum timeframe must be ignored."  *Id*.  The April 14 Memorandum further notes

11               [w]hile the Act makes inmates eligible for a maximum of 12
            months pre-release RRC placements, Bureau experience reflects
12               inmates' pre-release RRC needs can usually be accommodated by a
            placement of six months or less.  Should staff determine that an
13               inmate's pre-release RRC placement may require greater than six
            months, the Warden must obtain the Regional Director's written
14               concurrence before submitting the placement to the Community
            Corrections Manager.

15

16   *Id*. at 2-3.

17           On November 14, 2008, BOP officials issued another memorandum (the

18   "November 14 Memorandum") providing guidance to BOP staff considering inmate requests for

19   transfers to RRCs before the final 12 months of the inmate's sentence.  *Sacora v. Thomas*, *supra*,

20   slip op. at 3.  The November 14 Memo notes that "[i]nmates are legally eligible to be placed in a

21   RRC at any time during their prison sentence," and that "[s]taff cannot, therefore, automatically

22   deny an inmate's request for transfer to a RRC."  *Id*.  "Instead, "inmate requests for RRC

23   placement must receive individualized consideration."  *Id*.  Like the April 14 Memorandum, the

24   November 14 Memorandum similarly advises BOP staff that "RRC placement beyond six

25   months should only occur when there are unusual or extraordinary circumstances justifying such

26   placement, and the Regional Director concurs."  *Id*.

III.  JURISDICTION

Respondent contends that the petition pending before this court should be dismissed for lack of subject matter jurisdiction because petitioner is not challenging the fact or duration of his confinement, but instead, the conditions of his confinement, which respondent contends are outside the scope of habeas corpus relief.

Relief by way of a writ of habeas corpus extends to a prisoner in custody under the authority of the United States who shows that the custody violates the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2241(c)(3).  As a general rule, a federal prisoner challenging the validity or constitutionality of his conviction must bring a motion to vacate, set aside, and/or correct his sentence pursuant to 29 U.S.C. §2255, while a challenge to the manner of a federal sentence's execution must be brought pursuant to 28 U.S.C. § 2241.  *See Hernandez v. Campbell*, 204 F.3d 861, 864-65 (9th Cir. 2000).

Respondent argues that the United States Court of Appeals for the Ninth Circuit has characterized RRCs as places of incarceration.  If RRCs are places of incarceration, respondent argues, then petitioner's challenge is not to the manner of the execution of his sentence, but rather, to the conditions of his confinement, a suit respondent asserts would be properly brought under 42 U.S.C. § 1983 and not under section 2241.

In the very case cited by respondent for this assertion, however, the Ninth Circuit found some of the BOP's former regulations restricting placement in RCCs unauthorized by the applicable federal statute governing prisoner placement.  *See Rodriguez v. Smith*, 541 F.3d 1180 (9th Cir. 2008).  In *Rodriguez*, the Ninth Circuit affirmed a grant of relief very similar to that requested here: a writ of habeas corpus directing the BOP to properly evaluate the petitioner for RCC placement, affording the petitioner individualized consideration as provided for by 18 U.S.C. §3621(b)(1), without reference to the challenged policy.  *Id*. at 1189.  Although the question of subject matter jurisdiction was not expressly raised or discussed in *Rodriguez*, respondent's jurisdictional assertion is fundamentally inconsistent with the Ninth Circuit's

4

1   decision in that case.  In the same manner, it is also inconsistent with the recently filed case

2   *Sacora v. Thomas*, *supra*, slip. op. at 9.  In *Sacora*, the Ninth Circuit entertained another appeal

3   of a federal prisoner's section 2241 action challenging BOPs policies for RRC placement,

4   without finding that jurisdiction was lacking.  *See Id*.

5           In addition, various appellate decisions in this and other circuits have explicitly

6   extended the reach of section 2241 to matters related to the manner of execution of sentences that

7   were alleged to violate federal statutory or Constitutional provisions but did not involve a direct

8   or immediate effect on the fact or duration of confinement.  *See, e.g.*, *Montano-Figueroa v.*

9   *Crabtree*, 162 F.3d 548, 549 (9th Cir. 1998) (permitting a federal prisoner to challenge by way of

10  section 2241 the BOP's policies concerning the collection of court-ordered fines alleged to

11  violate federal statutes and the separation of powers doctrine in Article III of the Constitution);

12  *United States v. Lemoine*, 546 F.3d 1042, 1046 (9th Cir. 2008) (entertaining and resolving by

13  way of section 2241 a prisoner's challenge to BOP's requirement that a federal prisoner pay

14  restitution at a higher rate than ordered at sentencing pursuant to a federal statute); *Woodall v.*

15  *Federal Bureau of Prisons*, 432 F.3d 235, 241 (3d Cir. 2005) (federal prisoner's challenge to

16  BOP's policies for placement in community corrections centers (the predecessors to RCCs) was

17  cognizable on section 2241 habeas corpus review since claim involved the manner of execution

18  of sentence, in that placement in community confinement was qualitatively different than prison

19  confinement because it afforded the prisoner greater privileges).

20          Moreover, respondent's view on jurisdiction is not required by the wording of the

21  governing statute.  Sections 2241 provides that the writ of habeas corpus extends to a prisoner

22  who "is in custody under or by color of" the authority of the United States as well as to a prisoner

23  who "is in custody in violation of the Constitution or laws or treaties of the United States."  28

24  U.S.C. § 2241(c)(1), (c)(3).  Unlike section 2255, which expressly limits potential applicants to

25  prisoners "claiming the right to be released" (28 U.S.C. § 2255(a)), section 2241 does not contain

26  any such exclusions or limitations.  Petitioner's claim in the instant case challenges the actions of

1  a federal authority in the execution of his sentence as being in violation of a clear, specific

2  federal statute and thus comes within the express terms of section 2241.

3          For all these reasons, it is concluded that the court has subject matter jurisdiction

4  over this action under section 2241.

5                              IV.  EXHAUSTION

6          As a "prudential matter," federal prisoners are generally required to exhaust

7  available administrative remedies before bringing a habeas corpus petition pursuant to 28 U.S.C.

8  § 2241.  *Huang v. Ashcroft*, 390 F.3d 1118, 1123 (9th Cir. 2004) (quoting *Castro-Cortez v. INS*,

9  239 F.3d 1037, 1047 (9th Cir. 2001)).  The exhaustion requirement applicable to section 2241

10 petitions is judicially created and is not a statutory requirement; thus, failure to exhaust does not

11 deprive a court of jurisdiction over the controversy.  *Brown v. Rison*, 895 F.2d 533, 535 (9th Cir.

12 1990), *overruled on other grounds by Reno v. Koray*, 515 U.S. 50, 54-55 (1995).

13         If a petitioner has not properly exhausted his claims, a district court may in its

14 discretion either excuse the faulty exhaustion and reach the merits, or require the petitioner to

15 exhaust his administrative remedies before proceeding in court.  *Brown*, 895 F.2d at 535.

16 Exhaustion may be excused if the administrative remedy is inadequate, ineffective, or if

17 attempting to exhaust would be futile or would cause irreparable injury.  *Fraley v. United States*

18 *Bureau of Prisons*, 1 F.3d 924, 925 (9th Cir. 1993); *United Farm Workers of America v. Arizona*

19 *Agr. Emp. Rel. Bd.*, 669 F.2d 1249, 1253 (9th Cir. 1982).  Factors weighing in favor of requiring

20 exhaustion include whether (1) agency expertise makes agency consideration necessary to

21 generate a proper record and reach a proper decision; (2) relaxation of the requirement would

22 encourage the deliberate bypass of the administrative scheme; and (3) administrative review is

23 likely to allow the agency to correct its own mistakes and to preclude the need for judicial

24 review.  *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 880-81 (9th Cir. 2003) (citing *Montes v.*

25 *Thornburgh*, 919 F.2d 531, 537 (9th Cir. 1990)).

26 /////

1    The BOP has established an administrative remedy program which requires an

2    inmate to proceed through a four-level review process: (1) an attempt at informal resolution with

3    institutional staff (BP-8); (2) a formal written administrative remedy request to the warden (BP-

4    9); (3) an appeal to the BOP Regional Director (BP-10)); and (4) an appeal to BOP General

5    Counsel in Washington, D.C. (BP-11).  *See* 28 C.F.R. §542.10 et. seq.

6    In his amended petition, petitioner conceded that he did not fully exhaust available

7    administrative remedies prior to its filing, stating instead that he "nearly completed" the

8    administrative remedy process and lacked only a response from BOP General Counsel.

9    Petitioner argued that requiring exhaustion would be futile because the response from General

10   Counsel will be the same as the responses received at other levels, which are consistent with

11   BOP's discretionary policy that "inmates' pre-release RRC needs can usually be accommodated

12   by a placement of six months or less" and that "RRC placement beyond six months should only

13   occur when there are unusual or extraordinary circumstances, and the Regional Director

14   concurs," as set forth in the April 18, 2008 Memorandum and the November 14, 2008

15   Memorandum.

16   In a motion filed on May 17, 2010, however, petitioner demonstrated that he

17   subsequently completed the exhaustion process by receiving a response from BOP General

18   Counsel.  BOP General Counsel declined to grant petitioner's request for immediate or lengthier

19   RRC placement.  Petitioner's May 17, 2010 motion to supplement the record with this

20   information is granted.  Petitioner has demonstrated exhaustion of available administrative

21   remedies and the merits of his claim will be reached.

22                          V.  PETITIONER'S CLAIM

23   As previously set forth, petitioner's requests for immediate RRC placement were

24   denied by the BOP.  According to petitioner, following his most recent request, he received a

25   March 3, 2009 evaluation by his Unit Team informing him "your release needs are not unlike

26   that of most inmates" and that "RRC placement of 180 days is of sufficient duration to provide

1    you the greatest likelihood of successful reintegration into the community."  Petitioner was

2    referred for RRC placement for the last 180 days (six months) of his sentence.

3              The crux of petitioner claim is that the BOP's policy that six months RRC

4    placement is sufficient for most inmates, as set forth in the April 14, 2008 Memorandum and the

5    November 14 Memorandum, violates the statutory provisions that it purports to implement.

6    Specifically, petitioner argues that BOP's "six month policy" improperly ignores or does not

7    allow full consideration of the five specific factors set forth in section 3621(b) which BOP is

8    statutorily required to consider in designating a prisoner's place of employment.  *See* 18 U.S.C.

9    §3621(b)(1)-(5) (the factors to be considered include: (1) the facility's resources; (2) the nature

10   and circumstances of the prisoner's offense; (3) the history and characteristics of the prisoner; (4)

11   a statement by the court that imposed the sentence concerning the purposes for which the

12   sentence was determined to be warranted or recommending a type of penal or correctional facility

13   as appropriate; and (5) any pertinent policy statement issued by the Sentencing Commission).

14             In reviewing an agency's interpretation of a statute it administers, a court must

15   always first determine "whether Congress has directly spoken to the precise question at issue.  If

16   the intent of Congress is clear, that is the end of the matter[.]" *Chevron U.S.A. Inc. v. Natural*

17   *Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984).  Administrative implementation of a particular

18   statutory provision qualifies for deference under *Chevron* when it appears that Congress

19   delegated authority to the agency generally to make rules carrying the force of law, and that the

20   agency interpretation claiming deference was promulgated in the exercise of that authority.  *See*

21   *United States v. Mead Corp.*, 533 U.S. 218, 226-27 (2001).  If the statute is silent or ambiguous

22   with respect to the specific issue, the question for the court is whether the agency's answer is

23   based on a permissible construction of the statute.  *Chevron*, 467 U.S. at 843.

24             Petitioner argues that the applicable statute unambiguously forecloses the BOP

25   from presuming that six months RRC placement is sufficient for most inmates, because the

26   statute explicitly allows RRC placement of up to 12 month and mandates that placement be "of

8

1   sufficient duration to provide the greatest likelihood of successful reintegration into the

2   community."

3          The Ninth Circuit recently disagreed with the argument petitioner makes in

4   support of his claim.  *See Sacora v. Thomas*, *supra*, slip op. at 4-5.  In *Sacora*, the Ninth Circuit

5   held:

6          Although Petitioners are correct that the statue mandates that the
           BOP's regulations "ensure that placement in a community
7          correctional facility ...is ... of sufficient duration to provide the
           greatest likelihood of successful reintegration into the community,"
8          18 U.S.C. § 3624(c)(6)(C), the statute also provides that this period
           is "*not to exceed* 12 months."  18 U.S.C. § 3624(c)(1) (emphasis
9          added).  In delegating the authority to the BOP to adopt regulations
           implementing the SCA, the space between "sufficient duration"
10         and "12 months" was expressly left to the BOP to fill.  The BOP's
           policy- that six months in a RRC constitutes a "sufficient duration"
11         in most cases, but that each inmate is eligible for a 12-month
           placement and must be considered for placement in a RRC on an
12         individual basis - is facially consistent with the statute.

13  *Sacora v. Thomas*, *supra*, slip op. at 5.

14         Because the BOP policy challenged by petitioner was not adopted pursuant to the

15  notice-and-comment process, and does not purport to carry the force of law, it is not entitled to

16  the level of deference provided for in *Chevron*.  *Tablada v. Thomas*, 533 F.3d 800, 806 (9th Cir.

17  2008).  Despite not being entitled to *Chevron* deference, the challenged policy is still "entitled to

18  a measure of deference" under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944).  *Tablada*, 553 F.3d

19  at 806; *see also Reno v. Koray*, 515 U.S. 50, 61 (1995) ("It is true that the Bureau's interpretation

20  appears only in a 'Program Statement'- an internal agency guideline... [b]ut BOP's internal

21  agency guideline... is still entitled to some deference.").

22         Under *Skidmore*, the weight accorded to an administrative judgment will depend

23  on "'the thoroughness evident in its consideration, the validity of its reasoning, its consistency

24  with earlier and later pronouncements, and all those factors which give it power to persuade, if

25  lacking power to control.'" *Mead Corp.*, 533 U.S. at 228 (quoting *Skidmore*, 3223 U.S. at 140).

26  Under *Mead*, additional relevant factors include the "logic and expertness" of an agency decision,

1    the care used in reaching the decision, as well as the formality of the process used. *Wilderness*

2    *Soc'y v. U.S. Fish & Wildlife Serv.*, 353 F.3d 1051, 068 (9th Cir. 2003) (en banc), *amended by*

3    360 F.3d 1374 (9th Cir. 2004) (quoting *Mead Corp.*, 533 U.S. at 228, 235).

4               In *Sacora*, the Ninth Circuit reviewed the BOP's policy which petitioner

5    challenges here, and held:

> Analyzed in light of *Skidmore*, the BOP's policies are reasonable and sufficiently persuasive. The April 14 Memorandum provides that BOP "staff *must* approach every individual inmate's assessment with the understanding that he/she is now *eligible* for a maximum of 12 months pre-release RRC placement" and clearly states that... any other possible maximum timeframe must be ignored.

> The April 14 Memorandum does note that "Bureau experience reflects inmates' pre-release RRC needs can usually be accommodated by a placement of six months or less." The BOP, however, is entitled to use its experience in interpreting and administering a statute, as *Mead* recognizes. *See Mead*, 533 U.S. at 228 (noting that the "fair measure of deference to an agency administering its own statute has been understood to vary with circumstances, and courts have looked to the... [agency's] relative expertness" in determining whether to grant that deference). Further, the SCA expressly provides that "[n]othing in [§ 3624(c)] shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621." 18 U.S.C. § 3624(c)(4). Thus, the ultimate point of reference for RRC placement decisions under § 3624(c) is the set of factors set forth in § 3621(b), including the resources of the facility contemplated, the nature and circumstances of the offense, and the history and characteristics of the prisoner. *See* 18 U.S.C. § 3621(b). Given the statutory mandate that the BOP consider the resources of the facility to which it is considering designating a given prisoner when making placement decisions, it is not unreasonable for the agency to conserve the resources of RRCs by applying an extra check on the longest placements in RRCs. In addition, the BOP's decision to require unusual circumstances demonstrating a need for longer placements is persuasive given Congress' expressed purpose in enacting the SCA "to assist offenders reentering the community from incarceration... by providing sufficient transitional services for as short of a period as practicable." 42 U.S.C. § 17501(a)(5).

> ...

> For substantially the same reasons, the similar policy set forth in the November 14 Memorandum is consistent with § 3621(b) and

1        sufficient under *Skidmore*...

2        [¶]  ...[T]he BOP's policy as set forth in the November 14
Memornadum does not violate the SCA.

3

4   *Sacora v. Thomas*, *supra*, slip op. at 5-6.  The Ninth Circuit concluded:

5        The SCA does not require the BOP to make any placements in a
RRC for longer than six months; the statute affords the BOP the

6        option to make placements up to 12 months. Because the agency's
construction is entitled to some deference under *Skidmore,* and

7        because the BOP used its experience in placing prisoners in RRCs
in crafting its policies, we conclude that the policies are based on a

8        reasonable construction of the SCA.

9   *Sacora v. Thomas*, *supra*, slip op. at 9.

10        Again, petitioner seeks an order requiring respondent to evaluate him for transfer

11   to a RRC based on the specific factors of 18 U.S.C. § 3621(b), without taking into account or

12   utilizing the BOP Memorandum dated November 14, 2008.  Pursuant to existing Ninth Circuit

13   authority, however, the policy expressed in the November 14, 2008 Memorandum does not

14   violate its implementing statutory provisions and is a valid categorical exercise of BOP's

15   discretion.  The court cannot issue the relief sought by petitioner.

16        Nor can the court impose its judgment in lieu of the BOP and dictate to the BOP

17   where petitioner should be housed for the remainder of his sentence. The law is clear that

18   prisoners such as petitioner are entitled to receive a consideration for RRC placement based on

19   an application of the factors of section 3621(b); if such a consideration occurs, it is up to the

20   BOP to decide the appropriate length for RRC placement.  Nothing requires the BOP, once it has

21   applied the factors of section 3621(b), to afford an inmate any particular length of an RRC

22   placement.  The length of such placements remains within the BOP's discretion.  *See Sacora*,

23   *supra*, slip op. at 9.

24        Petitioner already received individualized consideration for RRC placement based

25   on the five factors of section 3621(b); he also received an explanation for the length of his RRC

26   placement in that he was advised it had been determined that his "release needs are not unlike

1  that of most inmates" and that "RRC placement of 180 days is of sufficient duration to provide

2  [him] the greatest likelihood of successful reintegration into the community."  That the BOP

3  concluded a 180-day RRC placement was appropriate for petitioner is of no moment for purposes

4  of habeas corpus review.  Indeed, the BOP could have afforded petitioner a longer RRC

5  placement, or a shorter placement, had the agency found it appropriate.

6  VI.  CONCLUSION

7  For the foregoing reasons, petitioner's May 17, 2010 motion to supplement the

8  record is hereby GRANTED.  The petition for writ of habeas corpus is hereby DENIED.

9  Because petitioner has failed to make a substantial showing of the denial of a

10  constitutional right, a certificate of appealability shall not issue in this case.  *See* 28 U.S.C.

11  § 2253(c)(2).

12  DATED: December 20, 2010

13  *Charlene H. Sorrentino*
CHARLENE H. SORRENTINO

14  UNITED STATES MAGISTRATE JUDGE

15

16

17

18

19

20

21

22

23

24

25

26